Case number 23-5183, Crowley Government Services, Inc. Appellants v. General Services Administration and Robin Carnahan in her official capacity as Administrator of the General Services Administration. Mr. Boland for the Appellants, Mr. Hazel for the Appellees. Good morning, Mr. Boland. Good morning, Your Honor. James Boland for the Appellant, Crowley Government Services, may it please the Court. This case is not about whether Crowley will be audited. Crowley welcomes an audit under this contract and always has. The question is about who will conduct the audit under what legal authority. So we've discussed... That question is not presented either. I beg your pardon, Your Honor? That question is not presented either. I understand it was not framed that way. Because of the letter. I'm not sure which letter. Who is going to do the audits under this contract is the issue. But that issue is not presented in light of GSA's letter that says we're not going to audit you anymore under this contract. So why isn't this case moot? Your Honor, the case is not moot because there is a substantial risk that these audits would resume. Your point is GSA may go back on its promise not to audit? It's not a promise. It's a letter stating a position at one point during the litigation. There's an opinion by Judge Scalia, when he was a judge on this Court, talking about whether when a representation is made by the federal government, whether they have to be enjoined. And he said no. The federal government is such that we can trust it when it says something that it's going to abide by. And if there's a problem there, then why not have the possibly ask for it in this appeal? Your Honor, I don't know that GSA would accept that. Why wouldn't they accept it if they've written letters making that representation to the district court? I don't think they even need it in light of Judge Scalia's opinion. In our view, given the lengthy litigation history, this is not a situation where GSA is changing its policy. Before you go any further, your complaint does not seek any retroactive relief, correct? You're not seeking money for damages? That's correct, your Honor. It's prospective relief under the contract. This audit authority, this is an important authority for GSA's Transportation Audit Division. They have taken this view that they have the authority to audit contracts. They intend to audit the next contract. By way of reference, Crowley was recently awarded the We agree with all of that. But taking Judge Randolph's point, if we believe the case law says that GSA would be bound by the representation of their letter for the duration of this contract, and your friend on the other side represents to us that they consider themselves bound by that, then all you're seeking is prospective relief with respect to this contract, not other future contracts or other contracts. What is there for us to do? Well, your Honor, one of the concerns is that this harm is not ending. Crowley was awarded the DFTS-2 contract. This is continuing on for many, many years. The lower court's decision, as I understand it, is binding on Crowley. It has collateral estoppel effect. The problem is we're going to be right back at this in a matter of months when the next contract transitions and GSA resumes. If the case is moot, we vacate the district court's decision. If the court intends to vacate the district court's decision, we would not object to that. What has happened with the proposed legislation that GSA put before Congress in March? As far as I'm aware, the Congress has not taken that up. It has not been enacted or passed. No committee hearings? Not to my knowledge, and they've tried twice on that. What the legislation did, it was to prevent this conflict. And who's side won in the legislative proposal? The legislative proposal actually came from the Department of Defense, and it sort of took GSA's view on this. The proposed legislation would essentially eliminate or carve out the Transportation Act from the CDA and basically allow GSA to audit a FAR-based contract. The very issue that is directly in response to this litigation. Now, it's an interesting fact pattern here because the Transportation Command, the Department of Defense has been on Crowley's side throughout this. That was one of the areas where we did obtain relief in the lower court. I think for the court's understanding, what really is motivating this is the source of money. When DOD audits contracts, that audits are paid by appropriations for DOD. But if they can sneak in an audit through GSA, GSA pays for the audits by money it takes from the contractor. So that's why this fight is really here. And I think, I'm presuming, but my understanding is that Transcom, the Department of Defense, is proposing this legislation because they can have GSA audit under a different legal authority and they don't have to pay for it. So in light of this discussion, I'm pleased to turn to any of the substance, but I don't want to if the court would prefer that we... I guess what I'm trying to understand is that if I look back at how the district court put it in its opinion, is that the district court said, well, the case boils down to two questions. And is GSA authorized to audit Crowley's contract with U.S. Transcom? And then if so, but the audit determinations are disputed by Well, if the district court is correct, let's start there. Is the district court correct that that's really the framing, that those are really the two issues presented by your complaint for declaratory and injunctive relief? I wouldn't necessarily agree with the framing as to which dispute process applies, although there's overlap. I mean, the thrust of our action is whether GSA has the legal authority to conduct the audits. And we've argued that because these two statutes are comprehensive in the areas that they're intended to cover, ICA-regulated carriers and government contractors, those are sort of the two buckets. When the audit authority under 313726B, that authority applies to that statute and the subject of that statute, which are ICA-regulated carriers. And so what the court basically did was took out subsection B, the audit authority, and said, I'm not going to address the rest of the statute, but I think because B is broad, that allows us to audit government contractors. And what we've said is, because both statutes are comprehensive, and we've looked at the two Federal Circuit cases that talk about how the dispute processes are in conflict, but we're not really dealing with a dispute here. We're dealing with, on this question, the audit authority. We're saying that because the audit authority is part of that comprehensive system, you can't pull out the audit authority. If the dispute processes are mutually exclusive, so is everything else. I understand that's your legal argument, but I guess just as an old district court judge here, former district court judge, getting down to brass tacks, you know, you've asked for relief. And if you get the relief that GSA prospectively cannot and will not audit this contract anymore, then there's no need to answer any further questions about how we resolve any dispute with respect to an audit you disagree with because there won't be any such audits, right? So, really, ultimately, if you prevail on that issue, if I were a district court judge, I don't see why I would have any reason to decide anything else. I mean, if the district court judge had said GSA had no authority to perform these audits, would the district court have any reason to rule on anything else in your case? No, your honor. So, if there's a letter that is binding, and there was even a Rule 68 offer of judgment that was tendered, right? That's right. Such that you have the equivalent, really, of a judgment, at least for the purposes of this case, with something that's enforceable with respect to this case, that they're not going to perform any more audits. What's left? Why are we here? What do you want us to do? Yeah, well, your honor, we would concede if the decision below is vacated and GSA would reach that agreement, then we would concede that it's moot. But our understanding is that GSA is not willing to give up this argument for the DFCS program. And I think that's one of our concerns, that we're about to begin the next contract, and it's an issue that's not going to go away. We're concerned that we're going to be right back out here again, have to essentially re-litigate the same issues again. So, the letter that you have right now sort of specifically says they won't audit you under this current contract, doesn't speak to the next contract. Correct. It's on the horizon. Correct. And GSA 100% is planning to audit the next contract. And so, we've had those discussions, and my understanding is they are not willing to refrain. How do we know that they're going to audit the next? Language to that effect has been included in the next contract, which this one does not have. In fact, Transcom changed the contract to deem Crowley a carrier on the next contract in response to this argument here. And, I mean, through discussions with GSA, that's something that we've offered and proposed, but the government has not accepted that position. Has the next contract been signed? Yes, it has. In July. All right. So, moving to the merits then, why don't you move to the merits? Explain to me, I guess, the district court and the government's argument, I think, on authority kind of boils down to the language of 3726B is new, was added in 1998, correct? That's right. And by saying transportation bills there, but not saying bills from a carrier or freight forwarder, like it says in A1, and like it says in other parts of 3726, that omission is significant. And so transportation bill doesn't have to mean always that it's from a carrier or freight forward. Why isn't that a pretty straightforward textual proper reading statute? So, your honor, I think I would begin by just referencing addendum page 72, which is the 1998 legislative history. It is, in our view, it's crystal clear that when Congress added subsection B, inserted that and broke up the existing paragraphs in Transportation Act, there was absolutely no intention or even understanding, not a whisper, that they were expanding the audit authority outside of ICA regulated carriers. The description on page 72 shows, in the list of history, talks about transportation bills. Transportation post payments audits are a historical legacy of a regulated transportation market. Crowley's not regulated by the ICA. Congress understood that when they were adding this post payment audit, they were simply, what they were doing was, in fact, the act, 1998 act, was intended to mandate prepayment audits because they talk about how post payment audits are ineffective. They were essentially spending a dollar to get a dollar, whereas prepayment audits were much more cost shifted to prepayment audits. There's not a hint anywhere in the legislative history that's what Congress intended, and as we've discussed, it's not just a plain text reading of B. The statute doesn't define transportation bill, but it does talk about bills throughout, and when you read it in context, you read that one audit line in context, it's very clear that they're talking about transportation, but the transportation bills are those presented by carriers to the government for payment. No carrier under this contract submits a bill to the government. There's no presentation of a bill. The government doesn't pay any carriers. Crowley negotiates rates with carriers. They pay them. Crowley has separate rates. The payment under the contract is a traditional government contract where the rates were set by competition. The ICA has nothing to do with this contract. You've said a few times that the ICA doesn't regulate Crowley if it's a broker, treated as a broker. I thought there were at least some requirements that the ICA imposes on brokers, including registration and notification requirements, things like that. Yes, Your Honor. Just to be clear, we've analogized Crowley is like a broker in its role, but we don't actually argue that they are a broker under the ICA. We're saying that under this FAR-based contract, they're essentially acting what would be equivalent to a broker under the ICA, where they are not involved in the physical move. They're not taking physical possession of the freight. This is a contract where Crowley is the coordinator for DoD. Crowley selects carriers, hires them. They're running the entire DoD freight transportation process. That involves a massive amount, millions of dollars, software development. There's labor teams involved. This looks like a government contract. Within that umbrella, you have them, Crowley, actually engaging subcontracted to carriers. Crowley's... I also said earlier the dispute is about who's going to conduct the audit. I was just curious. I couldn't find in the brief an explanation of what other government entity, if any, and under what authority would audit a contract like this, in your view. The Defense Contract Audit Agency, DCAA, is the Defense Department's primary audit agency. They exist solely to audit contracts like this. They audited the predecessor contract to this contract before GSA decided to start taking over. That was my point, that no one here is trying to avoid the But the issue is when DCAA audits a government contract, the auditors give a recommendation to the contracting officer. They respect the CDA authority. Then the contracting officer can decide whether or not they agree with the audit determination and issue a claim. That's how every government contract operates. That's how this one should operate. But the problem is when GSA, under this other statute, which doesn't apply here, when they audit, they make binding determinations. Under their process, they then proceed to collections. There's an inherent conflict. I think one of our concerns and one of the reasons why we're here, even though we prevailed on the issue that the contracting officer's final decisions are binding, the court's analysis of getting there was incomplete and it doesn't work. You cannot have a system GSA can audit a contract, as they did here, declare millions of dollars in overcharges, 10,000 plus notices in a single electronic transmission, and then channel it and divert to the CDA because we don't even know if there's a dispute yet with the procuring agency. We have to treat it like a dispute, submit a claim under the CDA. The contracting officer has 60 days at least to decide the claim. Meanwhile, during those 60 days, we could lose millions of dollars with no interest, which were guaranteed under the CDA. And if we get a favorable contracting officer's decision, the lower court agreed with us that it would bind GSA. That's great, but it doesn't deal with the first 60 days. It doesn't deal with the lack of interest. The court also did not consider what happens if we submit a claim to the CO and they agree with GSA. What happens there? The court suggested we go back to GSA under C1, the shall adjudicate language, but that's impossible because under the CDA, the CO's decisions are binding. So that would be futile. We'd go to GSA, they'd be bound by the contracting officer's final decision. Under the CDA, we're entitled to appeal to the Board of Contract Appeals and the Court of Federal Claims and the Federal Circuit. The district court's decision below doesn't address that. Essentially, the judge would shift it back to the GSA, which again, doesn't make sense and effectively would repeal the CDA. Can you help me understand 3726I? You can get that language in front of you. In particular, I1. It says that a carrier or freight forwarder may request the administrator of general services to review the action of the administrator if the request is received not later than six months after the administrator acts, et cetera, et cetera. I don't understand why would you request the administrator to review the administrator's own action? Who is, what administrator are they referring to there? So my understanding of that, that is essentially the statutory basis for the appeal process. So if like the Transportation Audit Division, which is GSA, and I think that's why they refer to it as the administrator in that context. If a GSA office adjudicates the claim against Crowley, then the appeal would be to go higher. So I think I is the appeal right under the statute, under GSA's process. So when it says to review the action of the administrator, they don't mean the administrator of general services. They just mean the contract administrator? My understanding is that they're referring to GSA's Transportation Audit Division and that authority. Who would review? Okay, so not the contract administrator, but someone within GSA, but not the administrator of GSA, even though it uses the administrator capitalized, which would seem to infer they're talking about the head of the agency or the administrator of the agency. That's right, Your Honor. So I guess I'm just trying to make sure I understand your position. Okay, so let's suppose we believe that 3726 should be interpreted the way that you say, in that GSA only has the authority to audit carriers, bills of carriers. Why aren't you a carrier? Because under the contract, Crowley does not hold itself out as the entity moving, physically moving the freight. That's an important distinction. The contract refers to the carriers as subcontractors. There's a clear distinction between the two. It's in writing, and we think under the 11th Circuit's Essex decision, our role, Crowley's role is in writing. So the public does not think that Crowley is the carrier under DFDS. Everyone knows it's the actual carrier, common carriers that are doing the movement. Crowley is just the prime government contractor who's coordinating this all for DOD. So we think the court can determine that we're not a carrier on that basis alone, but at a minimum, it's something that the lower court did not decide because the court determined that that was not relevant. But we think at a minimum, that's something that should be examined for further consideration below. Just to go back to the main statutory interpretation question, I think one outcome of your reading would be that for this category of entities called brokers, whether you are one or not, your reading would mean GSA cannot audit them, even though they are performing some role in carrying out transportation contracts for the government. And I'm just wondering if you have an why Congress would have set up the system that way, where GSA can only audit carrier contracts and not broker contracts. So I'm not sure if I can give you a definitive answer, but my understanding is, I mean, the carriers are the ones billing the government. And so, I mean, and that's part of why, you know, that goes sort of our interpretation of the statute. The carrier presents a bill to the government. Crowley doesn't present bills to the government? We don't present carrier bills. We don't, the government's not paying the carrier under this contract. Crowley does, but it's not a cost reimbursement contract. So the government pays Crowley invoices under our government contract. Those invoices include the services that were performed by Crowley and the carrier rates, the three circumstances. That's one of the reasons why we think the court's analysis sort of lead to an irrational result. The whole purpose of these audits is to determine that common carriers are not billing the government more than they're allowed to, which doesn't make any sense in a contract like this, because the government has no privity with carriers under this contract. No carrier is billing the government anything. They're billing Crowley. It doesn't matter what they're billing Crowley, because Crowley has set rates, set prices that Crowley proposed in a competitive acquisition six, seven years ago. Those rates, we're entitled to contract rates or contract price. And Transcom is certainly capable of determining whether we're billing correctly and whether our services are performed correctly. That's one reason why we disagree with the government's argument that GSA is needed for expertise. We don't need, no one needs GSA's expertise here. In fact, GSA, the problem with what's actually going on in this contract, it's one of the reasons why Transcom below said, told GSA to stop issuing these NOCs because they don't understand the realities of performance. But I don't, I guess to your honor, to answer the question, I don't know that the brokers would be billing the government and that you'd have that same issue where, I don't know how the broker would be paid, but you don't have the same issue where you would have a carrier with an ICA regulated rates, whatever they're allowed to bill. That's all GSA is doing. There's making sure that common carriers are not overbilling the government. That's the whole purpose of 3726. In fact, you go back to the 1940 statute, the original statute, it even, it even refers to upon presentation of bills by the carriers subject to the ICA. That was the original purpose of this statute. I guess I just don't understand why they couldn't be auditing and checking whether the broker is abiding by whatever rates they secured in the FAR process. It doesn't seem nonsensical to me. It might be different. Sounds fundamentally the same. You're checking whether the contractor is submitting a bill that accords with, that they've actually provided the services they promised to. Right. I don't know if I can understand what, you know, why Congress did not, but they had the opportunity. They had freight forwarders 30, 40 years ago. They did not have brokers. So at least we know that was Congress's intent. All right. Unless there's other questions, we'll give you some time on rebuttal. We'll hear from Mr. Hazel. All right. Thank you. Good morning, your honors. May it please the court, Stephen Hazel for the government. Thought I'd start by clarifying three points. One about the letter and two on the merits. The letter states that GSA would not continue auditing this contract, which as counsel pointed out, the time has almost run. GSA stands by the letter. The letter does not state that GSA would not audit future contracts, including this, the second round of this contract, which has been preliminarily awarded to Crowley. It's a multi-billion dollar government transportation contract. It's important both to GSA and to DOD that GSA's auditors be available to audit that contract. So that's sort of the state of play with the letter. I am having difficulty understanding it. Could you repeat that? Of course, your honor. The letter states, and we stand by, that GSA will not audit the DFTS, defense freight transportation services contract. There's a second round of that contract called the DFTS-2 that has been awarded to Crowley, and it's important to the government. That's not the subject of the lawsuit, is it? That's right, your honor. The only contracts that are the subject of the lawsuit, GSA has represented that it will not audit. That's correct, your honor. And it refunded, what, how many millions of dollars to Crowley? It was north of $20 million, your honor. That's correct. So on behalf of GSA, do you have any objection to memorializing that letter in the form of a consent decree? So, your honor, I'd have to talk to GSA about that. What possible objection could you have? So, your honor, as I said, we stand by the letter. We haven't contested the district court's mootness ruling. Neither side has briefed mootness here. So I think if that's something the court is going to address, supplemental briefs or letters may be appropriate. As I said, the letter came in before the district court's decision, correct? That's correct, your honor. Again, we don't contest the mootness ruling. We haven't addressed it. And you said your GSA stands by it, which means they're going to adhere to it. That's right, your honor. We've, GSA has issued the letter. We stand by it. I'm not aware of, you know, any reason or any plan. When do those contracts expire? I'm not sure of the exact date, your honor. I think we're approaching the point when it will transition from the DFTS-1 to the DFTS-2 contract, but I believe Crowley's contract counsel would have the exact date. You don't know when they expire? Is that what you're saying? I'm not sure of the exact date, when it switches from the first round to the second. Close? I believe so, your honor. How close? Again, Crowley's counsel will have the exact date. Well, I'd like to know that because that's another reason why this case might be moot. I mean, contracts expire, then that would be an additional reason why the case is moot, because they're only seeking retrospective relief. Let me ask you, when do these contracts expire? Contracts are still ongoing. The new award is under protest. And so I think that the current contract will run at least four or six more months. But the new contract hasn't been appointed. Right. Well, that's what I'm asking. So, your honors, I do want to make sure I discuss the merits, and I think we have two arguments here. One is... One second, one second on mootness. So, the opposing counsel also mentioned that there might be different terms in this future contract. So, if the idea is the second contract is going to keep this case alive somehow, there might be material differences if they've agreed in that contract to be treated as a carrier. For example, it seems even if any future contract could keep the case about this contract alive, it might not be that one. I mean, how do we think about that? So, your honor, I mean, we obviously haven't provided a comprehensive comparison of these two contracts. I mean, what I would say is the contract that the court has before it, the first round DFDS contract, I think, makes sort of everything clear that needs to be clear for the court to resolve this case. With respect to the carrier issue in particular, the question is, do you have legal responsibility for the shipment? You can move it yourself. You can choose to outsource that to someone else. But if you're legally responsible, if the shipment is damaged or lost, then you're a carrier. And this contract makes that clear. There's a section, I believe it's a JA 107, that talks about contractor liability. And it spells out explicitly that if the shipments are lost or damaged, Crowley is responsible. And then it goes on to make explicit that that is true regardless whether Crowley self-performs or whether it to outsource. So, this legal question... Where does this legal responsibility test go? How does that comport with definition of carrier in the statute? Yes, your honor. So, this is that legal responsibility text, which comes from Essex. That's how circuits, that's how district courts, that's our understanding of how every court to look at that statutory language has interpreted those definitions as part of the Transportation Act. As we've emphasized, the definition of a carrier is broad and includes not just performing the movement yourself, but arranging for someone else to do that. So, if that were the case, then every broker would be a carrier. But that clearly doesn't make sense, right? Because the definition of a broker in 13102.2, definition of broker, says that a broker is someone other than a carrier, right? So, Congress intended for those to be two different things. And it says that a for compensation. That's right, your honor. And I think as you read that, you actually highlighted the key language, which is other than a carrier. So, Congress recognized that when these definitions overlap, if you fall on the carrier definition, then you're not a broker, right? If the sort of Venn diagram overlaps, then you're a carrier, not a broker. And that's the case for Crowley here. We've cited Essex, we've cited a number of circuit court decisions. They've, in their reply, pointed to a couple of district courts. Those cases say the same thing that we do, which is you don't need to actually move the cargo. It's enough if you're legally responsible for it. Under that definition, given the language of the contract, which we've just discussed, it's clear that Crowley is a carrier as a matter of law, and the court can affirm on that basis. So, when will a broker not be a carrier? So, your honor, I think it might- When they're arranging for transportation with a motor carrier. So, your honor, in a situation where the broker is not taking on liability for the shipments, if they're lost or damaged, you could imagine a different version of this contract that made clear that Crowley would not be liable for these shipments. But that's why I asked you at the beginning, what does legal liability have to do with the text of statute? I don't see that anywhere in the text. Your honor, this is the way that courts have understood the statute, and it's the place that this legal responsibility test comes from, my understanding, and I think Essex's understanding as well, is in the common law of bailment. So, courts were reading the statute in light of those common law of bailment principles, which recognize that when someone is hired to transport something, they can't get out of their liability by outsourcing it to someone else. I think that's the principled basis underlying all of these decisions. And I'll just note that the contract itself adopts a very similar definition of what a carrier and a broker is. I believe that's at JA-177. It has a broker definition that's the same as the Department of Transportation definition that Essex relied on. So, you know, those are the authorities that we've pointed to. Crowley really hasn't pointed to any contrary authority on the carrier-broker question. I do also want to address the district court's ruling and our alternative argument, which is that regardless of whether Crowley is a broker or a carrier, these are transportation bills under 3726B. Judge Wilkins, I think you asked my friend, you know, isn't the plain language of subsection B, doesn't that indicate that, you know, these are transportation bills regardless what kind of provider you are? I think the statutory definition of transportation is clear. It's not limited to carriers. It covers all services related to the movement of people or property. Crowley doesn't have an answer to that definition. The district court relied on it. We've relied on it in our briefs. Crowley just hasn't addressed that part of the statute. Instead, they focused on legislative history. We think that history supports us. This provision used to authorize GSA to audit carriers. It did that expressly. Congress later amended it to say you can audit carriers and freight forwarders. And then in this 1998 change, Congress removed that language and instead said all transportation bills, our reading and the district court's reading gives effect to that 1998 shift. Crowley's reading does not. So there are these significant problems with Crowley's reading under the text, under the structure, and under the legislative history as well. The definition of transportation certainly helps you, but the term bill is undefined. Their argument is as a matter of structure and context that the statute is always using the word bill to refer to a bill from a carrier. In fact, it would be very odd to have a statute that has subsections A, C, D, E, F all about carrier bills and subsection B sticking out like a sore thumb and talking about something else entirely. And I guess what's the response to that contextual argument about what the word bill means? So, I think that aspect of Crowley's argument is really the opposite of how this court normally interprets statutes. I mean, when Congress uses limiting language in one provision but not in others, usually this court would give effect to that congressional choice. And just to take a step back and explain how we think about how all these provisions fit together, Congress created a system where the government's transportation audit specialist has broad audit authority but less expansive authority over non-audit activities, things like dispute resolution. You can see that in the statute's text and structure, right? Congress, when it wanted to limit something like dispute resolution to carriers or freight forwarders, it said that, but it didn't do that in subsection B, the provision about GSA's audit authority. The problem with, I take your point that, okay, yeah, in a sense, you know, when we see language that's missing from a provision that's added, that's significant, but we also are supposed to look at the whole, you know, context of the statute and have it make sense. And this lawsuit shows why your interpretation doesn't make sense in this, with respect to the fact that you have GSA performing an audit and you have the contracting officer disagreeing with the audit, and nobody knows how that's supposed to be resolved because it doesn't fit within the scheme of 3726. And it's nonsensical. So why isn't the easiest thing and the most sensible thing for us to conclude, kind of the most, the best reading and most reasonable reading of the statute, is that this sort of audit just is outside the scope of 3726B? So, your honor, a couple responses to that. I mean, first, there's nothing surprising or unreasonable about what Congress did here. It makes sense for Congress to say, look, we want our specialist transportation auditor to have this broad authority. But with respect to resolving disputes, there's always a contracting agency. There's always a contract involved. So there's always going to be some other agency that's in a position to resolve the dispute. It doesn't always need to be... How is this supposed to get resolved? This particular dispute, your honor? I think because of the letter that we discussed earlier, and because... Let's suppose the letter didn't exist and we've got this controversy and it's not going away. How is this going to get resolved? How under this statutory scheme does this get resolved? Your honor, we haven't challenged the district court's ruling on the dispute resolution issue, which was in Crowley's favor, as I think that they acknowledged. So the court recognized that for these audits, it would be Crowley's preferred resolution process, which is the Contract Disputes Act. So going through the contracting officer and eventually going to the Court of Federal Claims if the case gets that far. And how do they get relief in the Court of Federal Claims against GSA? So your honor, my understanding is that Court of Federal Claims cases are always against the United States. They're not against a particular agency. And so this idea that GSA wouldn't be subject to a Court of Federal Claims ruling, I'm not sure that there's a basis for that aspect of Crowley's argument. I think under either of these dispute resolution processes, whether it's the Transportation Act or whether it's the Contract Disputes Act, at the end, you get to go to the Court of Federal Claims and get a hearing there. I did just want to mention... What about the fact that you can't get interest? So your honor, I think the whether or not you get interest is perhaps more complicated than Crowley lets on, both whether you are always going to get interest under the Contract Disputes Act, whether you get it under the Transportation Act, I believe depends on a separate statute called the Prompt Payment Act, which has different conditions. I think the key point here is whether or not Crowley gets interest. I mean, that can't be what drives the Court's decision about how these statutes interact, especially because the case as it comes to this Court is about the audit authority issue and not the dispute resolution issue. We didn't cross appeal on that. That's not something the Court needs to resolve in this case. Well, we do have to resolve whether your for a proffered interpretation makes sense in light of the entire statutory scheme. Both the Transportation Act and the Contract Disputes Act, right? That's correct. I went back and I looked at a lot of treatises and they all seem to say that the Contract Disputes Act scheme is separate than the Transportation Act scheme, you know, following basically the reasoning of Dalton, right, from the Federal Circuit and the Comptroller General decision that it cites or the case that or other cases cites that are cited in Dalton. So, what about that? So, Your Honor, just to be clear about how the CDA and the Transportation Act fit together with respect to this case, the CDA, as Your Honor points out and as the name suggests, it's about disputes. It's not about audits. It's not about reviews, inspections. And so, as the District Court recognized, there's just no conflict between the part of the Transportation Act that's at issue here and the Contract Disputes Act. One allows GSA to perform audits. One sets out a resolution process that might apply after one of those audits are complete. So, you know, in our view, the Federal Circuit cases that Your Honor is referring to support GSA's reading and the District Court's reading as well. There were no further disputes between Crowley and the GSA at the day from the date of the letter because GSA agreed to refund all the charges that were posted by this notice of overcharge. Is that right? That's right, Your Honor. I had understood the question to be sort of asking more generally how these statutory schemes fit together rather than with respect to the particular. Well, there is one dispute, isn't there? There's $11.8 million in the Court of Claims. That's right, Your Honor. Crowley has brought a separate Court of Federal Claims case where that money is at issue and that case has been stayed pending this one. If I know I'm way over time, if I could just... Yeah, I have a question. Can you just clearly lay out what GSA thinks its authority is with respect to this audit? So one way to tee it up might be in their reply brief, Crowley says, if all we're talking about here is an advisory audit that I guess the agency could take and run with as it pleases or not, then they would have no problem with that. Is that all you're saying GSA can do? So no, Your Honor. I mean, with respect to an audit, yes. I mean, for GSA, an audit means the same thing as an audit means to anyone else, which is a review. It's not sort a final interpretation of a contract. Because Crowley is a carrier, the other GSA authorities are implicated here as well. So if they're not a carrier, which is the main audit 3726B statutory interpretation question in front of us, if they're not a carrier, you think you can perform an audit and then here's two things that might happen after. One is you send a demand for payment and the third would be you actually withhold future payments from them. You seem to be conceding you don't have that latter authority for it if they were a non-carrier. Is that correct, at least? So, Your Honor, we're not taking a definitive position on the construction of every provision here. What I can say is, you know, we think it's important to the reading of the statute that subsection B includes the word transportation and brings in that broader definition and doesn't include carrier. And that's a difference that any court interpreting the statute would need to take account in looking at those other provisions that you've identified. Absolutely true. And I think if the government is going to say we have statutory authority to conduct an audit, there should be an explanation of what that audit would entail and what happens next. And I think that's what the fact that there is not a provision that explains what happens next. It doesn't say, you know, for non-carrier audits, all disputes will be funneled to the Contract Disputes Act. It just doesn't seem to fit together when we read the whole statute. So, Your Honor, I guess one thing I'll say, and again, I apologize, I know I'm way over, but if the court has questions about this broader interpretation of transportation bills, the court doesn't need to reach that because Crowley is a carrier, right? And so I think the court can properly affirm on that narrower basis as well. So you just don't need to get there. The last thing I'll say on the carrier point in particular is to point out some of the implications of Crowley's interpretation of what a carrier is. This is a contract that involves thousands of freight shipments. Crowley's argument is that from shipment to shipment, they get to decide whether or not they count as a carrier, whether or not they're subject to the other requirements for carriers, whether or not they can be audited by GSA. That's an interpretation of the statute that just, frankly, doesn't make a lot of sense. They're not saying that they get to decide. They said that you decided by signing a contract with them that specified that carriers are their subcontractors and that they're not carriers. That's absolutely not what the contract says, Your Honor. So let me point the court to a couple parts of the JA that I think are relevant. One, as I think I've cited previously, the provision that deals with contractor liability and makes Crowley legally responsible. Two, the glossary, which defines both broker and carrier. What pages are you on? I'm at 171 defines broker, and I believe it's 177 defines a motor carrier. Next to motor carrier in parentheses, the contract puts contractor. That's the term that the contract uses to refer to Crowley again and again. So I don't think there was any doubt by anyone at the time this was signed that Crowley would be acting as a carrier, and I think that's something that everyone has recognized. GSA's regulations certainly recognize that a transportation provider like Crowley would be subject to audits. DOD's own rules that are about this contract in particular say expressly that it is subject to GSA audits, and the contract itself says that it's subject to independent auditing. So this is not news to Crowley. It's not a surprise. It's something in the contract that Crowley signed. Your Honors, unless the court has further questions, I would ask that you affirm. All right. Thank you. Thank you, Your Honor. I want to hit just a couple quick points. One on the issue of mootness, and Judge Randolph, I appreciate you raising the $11.8 million. I had overlooked that initially in my answer, and that was one of the reasons why actually why we think this is not moot. That money is out there, and even though we are not requesting the money in this action, it's a logical consequence of this action and the declaratory relief that we seek. This letter, although I don't find any evidence of this, but it appears to have been the result of a mediation between GSA and your client that began sometime in the fall. Is that correct? It followed a mediation, yes. Was the mediation directed by the district court? The district court, I think, asked the parties to consider it, and we agreed to pause for two or three minutes. And was the mediator an individual appointed by the district court? Is there a body? There's a body of mediators in this circuit, and I'm wondering, the mediator was not someone from the outside. It was someone affiliated in one way or another with the court, correct? No, Your Honor. There was actually no independent mediator. The parties just interacted together. So it was more of an ADR. So the mediation was just between the parties with no appointed mediator? That's correct. There was no discussion of this letter, but it came after that, after the parties were unable to reach agreement, and we had no advance notice of that letter. But if I may, I want to turn, and we summarize this on page six of our opening brief, but again, we disagree with the government's characterization of the contract. The performance work statement says the contractor's carrier shall pick up and deliver the shipment. It assigns the prime contractor ultimate responsibility for its motor carriers. I think when you read the contract as a whole, it's very clear there's a difference between the prime contractor and the carriers. Judge Garcia, I wanted to address and sort of respond to one of your questions about GSA's process. I would turn your attention to GSA's regulation at 41 CFR 102.118.430. That's the section that talks about what GSA considers to be its post-payment audit. That's the 3720 speed, and you read that. It covers everything. It's not just an audit. It covers adjudication, offsets, and all of that, and again, that's why we're here, and you're right. We would not have an issue if this was merely, I mean, I wouldn't concede GSA had legal authority to do the audit, but if it was simply an advisory audit and they're just telling Transcom, hey, we think there's an overcharge, we would not object. That's the entire issue here is the fact that they're acting under that authority, and then they believe they can unilaterally move forward irrespective of the CDA. I also wanted to go back briefly on the statutory language. Mr. Hazel mentioned that Congress removed language. There was no removal of language in the 1998 amendment removing carrier from transportation bill. 3726B was an addition in that amendment, and it simply said transportation bills because that's what the entire section was talking about, and the government has pointed to nothing, no hint that Congress thought that it was expanding audits to not just to non-carriers, but to broader contracts outside of those regulated by the ICA. In fact, the legislative history that does exist talks about the opposite. It talks specifically about the historically regulated carriers, and those are the transportation bills that Congress talked about when they enacted the 98 amendment. I would also just remind the court 3726H talks about a bill under this section, and that alone to me means that Congress understood that there's only one type of bill throughout the section of 3726. If they were referring to a certain type and there are different types of bills, they would have referenced those. So just so that I'm clear, under your reading of the statute, what new authority was created by 3726B? We do not believe there was any new authority. In fact, I think when you trace the old language, in my view, that language was simply clarifying what GSA was already doing, or GAO before GSA. The statute talked about GSA's audits, but there was never an affirmative sentence that said that GSA can do the audit, and I think that's all that sentence was doing. Why did Congress need to do that? I mean, why did Congress need to add 3726B? I think was there any court case that had brought into doubt whether GSA had the authority to audit motor carrier? To my knowledge, no. I don't know why, but I think the fact that Congress did not even mention this, there's no reference in this. It's not discussed in the summary of the bill and the preamble. It was all about requiring prepayment audits so that postpayment audits would go down and diminish in importance because they're not cost effective. That was specifically why Congress did this, and so I think the government's suggesting that they're pushing the opposite, that this now gives them some blanket right to audit far outside of any historical authority is not supported. All right. Thank you. We will take the matter under advise.
judges: Wilkins; Garcia; Randolph